

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERTA SKINNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 9068 |
| | ) |
| JO ANNE B. BARNHART, | ) Judge Rebecca R. Pallmeyer |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roberta Skinner claims she is disabled as a consequence of symptoms stemming from diabetes mellitus and hypertension. She filed this action against Jo Anne B. Barnhart, the Commissioner of Social Security, challenging the Social Security Administration's ("SSA") decision to deny her application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act. See 42 U.S.C. § 401 et seq. (Title II); § 1381 et seq. (Title XVI). The parties have filed cross-motions for summary judgment. For the reasons explained here, the Commissioner's motion is granted and Skinner's motion is denied.

## PROCEDURAL HISTORY

Skinner applied for DIB and SSI on April 17, 2002, claiming disability since February 4, 2002 due to complications from type II diabetes mellitus and hypertension. (R. at 37.) The application was denied on August 20, 2002 because the SSA believed her condition was not so severe as to preclude her from doing most routine activities. (R. at 16-19.) That decision was affirmed upon reconsideration on November 15, 2002. (R. at 22-23.) Skinner then requested a hearing before Administrative Law Judge ("ALJ") Michael R. McGuire. (R. at 26-27.) She was not represented

by counsel at that hearing and elected to have a decision made on the written record without any oral testimony. (R. at 27.) On August 22, 2003, the ALJ found that despite Skinner's complaints of diabetes and hypertension, the record did not support the existence of "significant medical abnormalities." (R. at 11.) The ALJ concluded that Skinner did not have any impairment or impairments that significantly limited her ability to perform basic work activities. (R. at 13.) Her request for review by the SSA's Appeals Council was denied on October 29, 2003, rendering the ALJ's decision final. (R. at 3-4.) Now represented by counsel, Skinner has filed a timely appeal with this court.

## FACTUAL BACKGROUND

Skinner was born on January 10, 1952 and was 51 years old at the time of her hearing before the ALJ. (R. at 37.) She attended school through the 11th grade. (R. at 48.) The record reflects that Skinner worked as a private home care provider from 1998 to 2000; there is no indication whether she has any additional work experience. (R. at 43.) Skinner states in her SSA Disability Report Audit that she originally stopped working in November 2000 because her employer did not pay her enough for the amount of stress and labor associated with the work, but that she has since developed a condition that makes work impossible. (R. at 27, 42.) Her SSI application seeks benefits dating back to February 4, 2002. (R. at 42-43.)

A. Medical History

Skinner was diagnosed with hypertension, high cholesterol, and type II diabetes mellitus in February of 2002 following her February 8 admission to the South Shore Hospital emergency room for complaints of prolonged dizziness. (R. at 70-77.) The record indicates that on February 18, 2002, she began to see Dr. Teresito V. Arcilles for follow-up care, and he then served as her primary

care physician until October 2002. The record contains progress notes from Dr. Arcilles dated March 4, March 23, May 29, June 6, July 6, September 3, and October 17, 2002, but the specific contents of those notes are largely illegible.[1] (R. at 101-07, 111, 112.)

Other portions of the record indicate that over the course of her treatment by Dr. Arcilles, Skinner was placed on a special diet of 1800 calories, and prescribed Ecotrin, Nifedipine, and Glipizide.[2] (R. at 47-49.) As of March 4, 2002, Skinner's cholesterol level was 205, which is within the borderline range for adults. (R. at 89.) On April 21, 2002, Skinner was again admitted to the emergency room with complaints of dizziness and nausea. (R. at 79.) A cardiac test performed by Dr. Myung S. Lee revealed results "indicative of acute myocardial damage." (R. at 89.) The Plaintiff spent the night in the emergency room and on April 22, 2002, Dr. C. Tyson performed an electrocardiogram that showed "an abnormal ECG."[3] (R. at 93.)

---

[1] The SSA asked Dr. Arcilles in July and October 2002 to clarify or elaborate on the information provided in his progress notes by submitting a further evaluation of Skinner's ability to perform work related activities. Dr. Arcilles declined both requests. (R. at 108.)

[2] Ecotrin is a form of aspirin, which is an anti-inflammatory medication used to relieve minor aches and pain. See http://www.drugs.com/xq/cfm/pageid_0/htm_D00170A1.htm /type_mtm/tgid_54/bn_Ecotrin/qx/index.htm. Nifedipine is used to treat high blood pressure by acting as a calcium channel blocker that eases the workload of the heart. (See http://www.drugs.com/xq/cfm/pageid_0/htm_D00051A1.htm/type_mtm/tgid_54/ bn_nifedipine/qx/index.htm). Glipizide is an anti-diabetes medication that stimulates the pancreas to secrete more insulin. (See http://www.drugs.com/xq/cfm/pageid_0/ htm_D00246A1.htm/type_mtm/tgid_54/bn_glipizide/qx/ index.htm).

[3] Dr. Tyson's report does not explain specifically how this result was abnormal, though it states that the findings indicate a mild form of ischemia, a medical condition where plaque and fatty matter narrow the inside of an artery to a point where it cannot supply enough oxygen-rich blood to meet the organ's needs. (See http://my.webmd.com/ content/pages/9/1675_57851.htm).

On October 22, 2002, Skinner began seeing Dr. Sarah Glavin as her new primary care provider. (R. at 123-24.) Dr. Glavin discontinued Skinner's Nifedipine prescription based on the possible side effects of dizziness and headaches, and gave her a new prescription for Enalapril[4] to control her hypertension. (Id.) On November 14, 2002, Skinner returned to see Dr. Glavin to get paperwork completed for her application for public aid. (R. at 122.) During that examination, Skinner noted that she had been unable to work in the past, but indicated that since starting her new medication she felt better and could pursue employment. (Id.) Dr. Glavin agreed with this assessment and indicated that Skinner could sustain gainful employment in her current medical state. (Id.) In a follow-up appointment on December 17, 2002, Skinner told Dr. Glavin that she intermittently had "bad" days where she felt weak and unable to go about her activities. (R. at 115.) The only other symptom Skinner reported during this appointment was an intermittent dull headache. (Id.)

Skinner returned to see Dr. Glavin on March 19, 2003 with complaints of vertigo and light-headedness. (R. at 114.) Dr. Glavin suggested that she believed this was a result of a viral upper respiratory infection, which she treated with Tylenol and meclizine.[5] (Id.) The last medical visit reflected in the record occurred on June 4, 2003. (R. at 121.) At that time, Skinner still claimed she did not feel well and experienced intermittent symptoms with good days and bad days. (Id.) She noted fleeting symptoms of dizziness, light headedness, and sharp pains on the top of her head, but

---

[4]  Enalapril is used to treat high blood pressure. See http://www.drugs.com/xq/cfm/pageid_0/htm_D00013A1.htm/type_mtm/tgid_54/bn_enalapril/qx/index.htm

[5]  Meclizine is an antihistamine that blocks the naturally occurring chemical histamine in the body and is used to treat nausea, dizziness, and vertigo. (See http://www.drugs.com/ xq /cfm/pageid_0/htm_D00859A1.htm/type_mtm/tgid_28/bn_meclizine/qx/index.htm)

4

she also acknowledged that she felt better after taking medication. In addition, Dr. Glavin's report observed that at least some of Skinner's symptoms could be traced to menopause. (Id.)

**B.      Hearing Waiver**

Skinner signed a written waiver of her right to a personal appearance before the ALJ and instead elected to have the case decided on the written evidence. (R. at 27.) Thus, there is no testimony or other evidence regarding the nature of the severity of her symptoms beyond what appears in the medical reports from her doctors and the paperwork filed with the SSA. In the waiver, Skinner gave the following explanation for her decision to not appear for a hearing:

> It's a struggle not knowing what each day is going to bring, I deal with my symptoms on bad days as well as good days, I just have to face the fact that I can't do things like I used to. This illness has slowed me down entirely, overall I suffer from numerous things in dealing with this illness, such as light headedness, high blood pressure, fatigue and headache, as well as weakness and dizziness, including my diet to obtain cholesterol.

(Id.)

**C.      The ALJ's Decision**

Based on the written record, the ALJ found that Skinner "had complaints of diabetes and hypertension" but that the objective medical evidence failed to establish significant abnormalities sufficient to meet the severity requirement for SSI benefits. (R. at 11.) In reaching this conclusion, the ALJ noted that the medical reports submitted by South Shore Hospital and the University of Chicago Hospital indicated that Skinner's episodes of weakness and dizziness "are essentially mild and do not appear to be chronically frequent." (Id.) The ALJ stated that most of Skinner's symptoms appeared to be tied to the intake of Nifedipine, noting that her condition improved when

Dr. Glavin took her off that medication and prescribed Enalapril. (R. at 12.) The ALJ further noted that Skinner's hypertension appeared to be controlled through medication. (Id.)

The ALJ acknowledged Skinner's statement that she experiences "good and bad days" but concluded that "her good days essentially outweigh her bad days." (Id.) The ALJ based this conclusion in part on the fact that in November 2002, Skinner told Dr. Glavin that she felt well enough to work. (Id.) The ALJ also pointed out that in Skinner's application for benefits, she stated that she stopped working because of low pay, and not because of complications stemming from diabetes and hypertension. (Id.) The ALJ found that these factors combined with a sparse record of medical evidence to indicate that Skinner did not have a severe impairment and could sustain gainful employment. (R. at 13.)

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. See 42 U.S.C. § 405(g). In reviewing this decision, the court does not engage in its own analysis of whether Ms. Skinner is severely impaired as defined by the Social Security Regulations. Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). Rather, the court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." Id. (citing 42 U.S.C. §405(g)). Thus, this court will not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." Id. (citation omitted). This court will consider evidence to be substantial and satisfy this standard "if a reasonable person would accept it as adequate to support a conclusion." Id. (citation omitted).

Despite the great deference this court accords to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (internal citations omitted). The court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young*, 362 F.3d at 1002. The Seventh Circuit has noted the court's obligation to critically review the record to ensure that the ALJ did not "play doctor" by making "independent medical findings" in its analysis. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). In addition, the Seventh Circuit has emphasized that when the ALJ commits an error of law, "reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani on Behalf of Hayes v. Heckler*, 797 F.2d 508, 510 (7th Cir. 1986).

## DISCUSSION

The Social Security regulations provide a five-step sequential test to determine whether a claimant is disabled and thus entitled either to DIB or SSI. Briefly, an ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment(s) meet or exceed any impairment listed by the SSA regulations as being so severe as to preclude substantial gainful activity; (4) if the claimant's impairment is not listed as conclusively disabling, whether she is unable to perform her former occupation; and (5) whether the claimant can perform any other work in the national economy. *Young*, 362 F.3d at 1000 (citing 20 C.F.R. 404.1520(a)(4)(i)-(v)). If at any step the ALJ can make a finding of disability or non-disability, he need not review the claim further. *Id.*;

20 C.F.R. §§ 404.1520, 416.920. A claimant will automatically be found disabled if she makes the requisite showing at steps one through three. See *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 512 n.3 (7th Cir. 1999). If the claimant is unable to satisfy step three, she must demonstrate that she lacks the residual functional capacity to perform her prior job(s). If she makes this showing, the burden shifts to the Commissioner to establish that the claimant can engage in some other type of substantial gainful employment. *Id.*

In this case, the ALJ concluded his analysis at step two, determining that Skinner's condition did not constitute a severe impairment. (R. at 10-12) Skinner seeks reversal of that decision, arguing that the ALJ committed legal error in failing to: (1) obtain a valid waiver of counsel; (2) fully and fairly develop the record; and (3) utilize the appropriate standard for making a step two evaluation. The court addresses each argument in turn.

### A.     Waiver of Counsel

Skinner first claims that the ALJ committed legal error by obtaining an invalid waiver of counsel. In order to obtain a valid waiver of counsel, the ALJ must explain to a *pro se* claimant: (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney's fees to 25 percent of past due benefits. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). Failure to provide these three explanations does not inherently constitute cause for remand, however. Instead, if the Commissioner can show that the ALJ adequately developed the record, then the absence of counsel did not prejudice the claimant in a manner that warrants a remand. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (holding that a *pro se* claimant was not prejudiced by lack of counsel where the ALJ developed a substantial record in support of his findings). Once the Commissioner establishes that the record was

fully and fairly developed, the burden shifts to the plaintiff to rebut the Commissioner's showing by demonstrating prejudice or an evidentiary gap. *Id*.

Prior to the ruling by the ALJ, Skinner had received four notices that referenced the availability of counsel, and she signed a waiver of her right to an oral hearing that specifically referred to the value both of retaining counsel and participating in an oral hearing. In the first two letters, dated August 20 and 22, 2002, the SSA explained the right to representation, offered aid in locating a lawyer, and provided notice of the availability of free legal services. (R. at 18, 22.) The third letter described the ALJ proceedings and notified Skinner of her right to an attorney at the ALJ hearing. (R. at 24.) The signed waiver explained that "I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative." (R. at 27.) This waiver also addressed the value of having an oral hearing, saying "I understand that this opportunity to be seen and heard could be helpful to the ALJ in making a decision." *Id*.

In the court's view, these notices do not fully satisfy the requirements set forth in *Binion*. Though the documents do mention the right to retain counsel and the availability of affordable counsel, they do not elaborate on the advantages of retaining counsel or notify Skinner of the 25 percent cap on attorney's fees. *See, e.g., Wirth v. Barnhart*, 318 F. Supp. 2d 726, 740 (E.D. Wis. 2004) (waiver of counsel was invalid where the ALJ "did not specifically explain the twenty-five percent limitation on attorney's fees to the plaintiff."); *Henderson v. Barnhart*, 219 F. Supp. 2d 966, 973 (E.D. Wis. 2002) (ALJ did not obtain a valid waiver of counsel when the signed form did not explain how representation might be helpful or mention the 25 percent cap on attorney's fees). Even in cases of an invalid waiver of counsel, however, a claimant is only entitled to a remand upon a

showing that the ALJ did not fully and fairly develop the record, Binion, 13 F.3d at 245, a matter this court addresses below.

## B. Development of the Record

Social security hearings before an ALJ utilize an inquisitorial model of adjudication rather than an adversarial model. Consequently the ALJ always has a duty to make sure the record is fully and fairly developed. *Sims v. Apfel*, 530 U.S. 103, 110 (2000). The Seventh Circuit places particular emphasis on this responsibility when the plaintiff proceeds *pro se*. *Binion*, 13 F.3d at 245; *Thompson*, 933 F.2d at 586. The ALJ's duty is to develop a complete record both for and against the claimant. The Seventh Circuit has recognized, however, that no record is ever technically complete; the ALJ can always obtain another medical examination, seek the views of another consultant, or wait six months to see if the claimant's condition changes. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993) (court need not exhaust every possibility in order to satisfy its responsibility to develop the record). Thus, a court "generally respects the ALJ's reasoned judgment" regarding how much evidence is required for a finding concerning a claim of disability. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (deferring to the ALJ's judgment in determining how much evidence to gather).

The responsibility of this court is to determine whether the record contains a "significant omission" in the evidence that makes it inadequate to determine the existence of a disability. *Id*. An omission will only be "significant" if it is prejudicial. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) (holding that even when an ALJ conducts a "marginal hearing," if all the relevant evidence makes its way into the record there is no need for a remand and a new hearing). The burden to show that the ALJ fully and fairly developed the record falls on the Commissioner. *Binion*, 13 F.3d at 245.

Skinner argues that the ALJ failed to fully develop the record[6] in three respects: (1) the ALJ did not require Skinner's testimony before issuing his decision; (2) the ALJ did not request more information from Dr. Arcilles; and (3) the ALJ failed to utilize an independent medical examiner before reaching his conclusion. For the reasons discussed below, the court finds that none of these actions constitutes a failure by the ALJ to fully and fairly develop the record.

With respect to the ALJ's failure to require Skinner's live testimony, the court notes that the ALJ did offer Skinner the opportunity to testify at a hearing. Skinner chose to decline that invitation, despite receiving notice that her "personal appearance before an ALJ would provide [her] with the opportunity to present written evidence, [her own] testimony, and the testimony of other witnesses," and that "this opportunity to be seen and heard could be helpful to the ALJ in making a decision." (R. at 27.) Skinner contends that this notice was insufficient because her testimony could have been pivotal rather than merely helpful in determining the severity of her impairment. In Skinner's view, the need for her testimony was particularly acute because the ALJ had to evaluate the subjective impact of her pain on her ability to work. She cites *Carradine v. Barnhart*, 360 F.3d 751 (2004), for the proposition that subjective pain alone can be severe and disabling even when objective medical findings do not corroborate that pain. Skinner reasons that if subjective pain alone can satisfy the step two severity requirement, the ALJ's failure to fully develop the record with respect to the extent of her subjective pain constitutes reversible error.

The court concludes that the ALJ did not fail in his responsibility to fully and fairly develop the record by accepting Skinner's waiver of her right to testify at an oral hearing. Skinner's argument

---

[6] The Plaintiff correctly points out that the failure to adequately develop the record is itself good cause for a remand. *Cannon v. Harris*, 651 F.2d 513 (7th Cir. 1981).

11

would effectively render any such waiver irrelevant as a plaintiff could waive a hearing and then claim the ALJ failed to develop the record by allowing her to take that action. As a result, an ALJ could never reach a valid determination when a plaintiff refused to testify because he could not evaluate the subjective extent of a party's pain. *Carradine* does not extend that far. *Carradine* stands for the principle that the ALJ is expected to evaluate the claimant's subjective complaints even when no objective medical evidence supports the presence of a disability. 360 F.3d at 753 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). *Carradine* prohibits the automatic dismissal of a claim built solely on allegations of debilitating pain; it does not require the ALJ to hear live witnesses concerning those allegations. *Id.* In this case, the ALJ did evaluate Skinner's subjective complaints as set forth in the record and determined that they were contradictory and insufficient for a finding of severity at step two. The basis for that conclusion was Dr. Glavin's November 14, 2002 progress report in which Skinner acknowledged she could pursue employment. (R. at 12.) The ALJ did not have an affirmative responsibility to solicit more subjective analysis from Skinner when she had already declined to provide it by waiving her right to appear at a hearing.

Skinner also claims that the ALJ failed in his duty by not requesting further information from Dr. Arcilles. Again, the court disagrees. The inquisitorial model of adjudication does not require an ALJ to act as counsel for the plaintiff. *Thompson*, 933 F.2d at 586. Consequently, the Seventh Circuit has held that the burden placed on the ALJ to fully develop the record does not "go so far as to require the ALJ to update objective medical evidence to the time of hearing." *Luna*, 22 F.3d at 693. The plaintiff retains a responsibility to furnish medical evidence to the ALJ. *Id.* As long as the ALJ ensures that all relevant evidence finds its way into the record, he has satisfied his duty to develop the record. *Nelson*, 131 F.3d at 1236.

Although the ALJ stopped short of soliciting further information from Dr. Arcilles, he did not fail to develop the record. Notably, the ALJ had medical evidence that was more recent than Dr. Arcilles's last evaluation; Skinner's last appointment with Dr. Arcilles occurred in October 2002, and the record contains information from Dr. Glavin from November 2002 to June 2003. In any case, Skinner does not indicate what further evidence Dr. Arcilles could have provided or what prejudice resulted from the ALJ's decision not to solicit more evidence from him. Significantly, in July and October of 2002, Dr. Arcilles declined requests from the SSA for additional information regarding Skinner's condition. (R. 100, 108.) As the SSA regulations explain, SSA staff is not required to "seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 416.912(e)(2). By twice refusing to submit additional information to the SSA, Dr. Arcilles sufficiently indicated to the ALJ that he would decline to provide additional examinations if asked. The court concludes that the ALJ satisfied his duty to fully and fairly develop the record with respect to the evidence provided by Dr. Arcilles.

Finally, Skinner claims that the ALJ failed to develop the record by not consulting an independent medical examiner. An ALJ must consult an independent medical examiner when the record is not developed. 20 C.F.R. § 416.927(f)(2)(ii), 416.912(e), 404.1512(f). The ALJ has discretion, however, to determine whether the record requires further development by means of additional medical examination. *See Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (ALJ did not err by not ordering a consultative examination where objective medical evidence did not support the plaintiff's claim). The court's role is limited to determining whether the record provides an

insufficient basis for the ALJ's conclusions or the medical evidence conflicts so as to make a reasoned determination impossible. *Johnson v. Chater*, 969 F. Supp. 493, 512 (N.D. Ill. 1997).

In this case, the ALJ examined medical reports from Skinner's two emergency room trips, as well as seven reports from Dr. Arcilles and five reports from Dr. Glavin. From this record, the ALJ rationally concluded that there was no significant ambiguity regarding Skinner's medical condition that warranted clarification. Indeed, Skinner has not identified any such ambiguities in her argument to this court. As the ALJ could reach a decision regarding the severity of Skinner's impairments without further medical evidence and saw no contradictions in the record, the ALJ had no obligation to order a consultative medical exam. Given the deferential standard of review on this issue, the court finds that the ALJ's decision not to order further testing was based on substantial evidence and consequently does not constitute cause for a remand.

In light of the court's conclusion that the ALJ fully and fairly developed the record, the burden shifts to Skinner to demonstrate how lack of counsel prejudiced her hearing before the ALJ. Skinner does not explain how the additional medical records or a consultative examination would have impacted the ALJ's finding. She instead refers only to general statements regarding the severity of her impairments, but does not indicate what potential pieces of evidence were not included in the record that could have effected the outcome. Skinner has not demonstrated that she was prejudiced by the lack of counsel and the ALJ's actions satisfy the requirements set out in *Binion*.

C.    Analysis at Step Two

Skinner also claims that the ALJ failed to use the proper test for evaluating severity at step two, and that his findings under this test are not supported by substantial evidence. The Supreme Court has endorsed the use of a *de minimis* standard for the showing of severity at this stage, and the

14

Seventh Circuit has repeatedly utilized this standard in SSI cases. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990). Under this standard, the ALJ may dismiss a claim where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. Thus, if the ALJ has any uncertainty in determining the effect of the claimant's impairments, the evaluation does not end with step two. *Id.*

There is no indication from the ALJ's opinion that he erred in his application of this standard. Skinner emphasizes that dizziness and pain caused by diabetes and hypertension limit her ability to walk, stand, sit, and reach (R. 27, 51-3, 55, 58, 64), all of which are basic work activities. SSR 85-28. The mere presence of any limitation on a basic work activity does not satisfy step two, however. Instead, the ALJ is required to examine the extent of limitations imposed by any symptoms. The ALJ here did examine the objective medical record and found no evidence of a significant impairment that precluded Skinner from working. He also permissibly relied on the opinion of Skinner's physician, Dr. Glavin, that Skinner could work with her current symptoms. The record reflects that Skinner herself agreed with Dr. Glavin regarding her ability to work. From this evidence, the ALJ reasonably concluded that these impairments had no more than "a minimal effect on her (Skinner's) ability to work," (R. at 12), and thus fulfilled his duty to build a logical bridge from the evidence to his conclusion.

Skinner further argues that she meets a *de minimis* standard because she suffers from a severe type of diabetes. In support of this claim, Skinner applies her condition to Listing 9.08(B) for diabetes mellitus and cites *Mangus v. Barnhart*, No. 03 C 2370, 2004 WL 1699029, at *7 (N.D. Ill. June 28, 2004), for the proposition that an ALJ is deficient in his analysis by not addressing whether

15

the claimant meets the Listing's requirements. The court in Mangus dealt with a review of a step three determination, not a step two determination as presented in this case.[7] The Listing exists to guide an evaluation at step three and becomes relevant only if the ALJ determines that the claimant suffers from a severe impairment that significantly limits the ability of a claimant to sustain gainful employment at step two. Requiring an ALJ to compare a set of symptoms to the Listing as part of a step three analysis when he determines that the claimant fails step two would defeat the purpose of the sequential test presented in the CFR. At step two, the ALJ's duty to evaluate the objective medical record requires an evaluation of the symptoms and their impact on the claimant's ability to work. The ALJ's failure to examine whether Skinner's symptoms meet the standards of Listing 9.08(B) does not constitute reversible error.

Skinner's remaining challenges to the ALJ's decision bear only brief analysis. First, she claims that the ALJ failed to consider the role of medical side effects in making his evaluation of the severity of her symptoms, as required by SSR 96-7p. There is no indication that the ALJ failed to follow this regulation, however; indeed, his ruling specifically mentions and considers the impact of these side effects in reaching his conclusion. (R. at 12.) Second, Skinner contends that the ALJ erred by failing to consider her subjective complaints in making a decision regarding the severity of her symptoms as required by SSR 96-3p. The ALJ, however, did consider the list of subjective complaints presented by Skinner and concluded that the objective medical record did not corroborate the disabling severity of those symptoms. (R. at 12.) The ALJ is not required to make

---

[7] Skinner also argues that she would have been found disabled at step five. The test for disability is a five step sequential evaluation and, thus, a party must meet the standards at every step before a finding of disability may be made. 20 C.F.R. 404.1520(a)(4)(i)-(v). Whether Skinner meets the standards at any other step is irrelevant if she does not meet the standards at step two.

a finding of a disability based solely on the claimant's subjective assessment of her ailments. Such a ruling would effectively render step two irrelevant, as no claimant would ever subjectively argue that her impairments were not severe.

Finally, Skinner points out that the Social Security Administration has rescinded an earlier ruling that deemed hypertension and diabetes mellitus to automatically fail the severity test. *See* SSR 85-28. Contrary to her argument, this rule change cannot be interpreted as establishing that the SSA now considers hypertension and diabetes mellitus to be automatically severe. In any event, there is no indication that the ALJ dismissed the symptoms as not being severe merely because they were related to diabetes and hypertension.

## CONCLUSION

For the reasons set out above, Skinner's motion for summary judgment or for remand (Doc. No. 15-1, 15-2) is denied and the Commissioner's motion for summary judgment (Doc. No. 16) is granted. The final ruling of the Social Security Administration is affirmed.

ENTER:

Dated: June 29, 2005

REBECCA R. PALLMEYER
United States District Judge